COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judge McClanahan and Senior Judge Coleman
Argued at Salem, Virginia


KELIS ALLEN HAMILTON

MEMORANDUM OPINION[*] BY
v.      Record No. 1591-07-3      JUDGE SAM W. COLEMAN III
NOVEMBER 4, 2008
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Thomas H. Wood, Judge

Tate C. Love (Black, Noland & Read, P.L.C., on briefs), for
appellant.

Karen Misbach, Assistant Attorney General II (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Kelis Allen Hamilton (appellant) appeals his convictions of participating in a criminal

street gang in violation of Code § 18.2-46.2 and three counts of assault and battery by a mob in

violation of Code § 18.2-42.  He argues that the evidence was insufficient to prove that he was a

member of a criminal street gang, that the evidence was insufficient to prove that the assaults of

Garrett Johnston and Daniel Payne were committed by a mob, and that the evidence was

insufficient to prove that he was a member of a mob that assaulted Johnston, Payne, and Zachary

Small.  We disagree and affirm.

BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

438, 443, 358 S.E.2d 415, 418 (1987)).  So viewed, the evidence proved that Johnston and his

brother hosted a party at a large farm as an end of summer celebration.  Approximately 400

people attended the party, and alcohol was available.  The party lasted from approximately

10:00 p.m. until approximately 3:00 the next morning.  Johnston saw a number of individuals

with red bandanas standing together in one section of a tent.  Johnston introduced himself to the

individuals and asked, "Are you guys Bloods?"  The individuals responded that they were.

Numerous witnesses testified as to certain events that each had observed over the course

of the evening that were relevant to collectively prove that appellant was a member of a gang and

as such participated in the mob activity in which Johnston, Payne, and Small were assaulted by

the gang members.

Christopher McLaughlin attended the party, and he saw appellant there.  Appellant

approached McLaughlin, who was wearing a red shirt and a red baseball cap from his

employment, and said, "You're a Blood and don't even know it."  McLaughlin responded he

was not a Blood, but appellant again told McLaughlin he was a Blood because he was wearing

red.  McLaughlin walked away from appellant.

Special Agent Mark Campbell with the Virginia State Police Gang Unit, a gang

investigator, testified he was familiar with a gang called the Nine Trey Bloods.  Campbell

testified Tyrone Marquise Scott had a tattoo that showed he was a second lieutenant in the Nine

Trey Bloods.  Members of the Bloods frequently wore Boston Red Sox's caps because they

displayed a large red capital "B."

At approximately 3:00 a.m., Johnston saw a big scuffle and heard the individuals that he

had spoken to earlier say "Blood at" in a way that mimicked gunfire.  Johnston approached the

group and asked what was going on.  Scott hit Johnston with a tiki torch.  Johnston testified

several individuals with red bandanas covering their faces surrounded Scott as if to protect Scott.

Johnston was unable to identify appellant as being a member of the group surrounding Scott. Katherine Duncan saw Scott hit Johnston, and she testified that Scott was "standing out in front of a crowd wanting to fight people." The individuals standing with Scott wore red bandanas and red t-shirts.

At some point during the party, Payne heard what sounded like fireworks and he went to investigate. An individual hit Payne in the face with a tiki torch, but he could not identify him. Payne "went after" the individual who had hit him and when he did so he felt a gun against his chest. The individual with the gun pulled the trigger, but the gun did not discharge. Payne testified there were two men standing next to each other and he was not sure if the individual who hit him with the tiki torch was the same individual who held a gun to his chest. Payne could not describe either individual. Adam Switzer saw individuals wearing red, and heard someone yell "Blood at." Switzer saw someone hit Payne with a tiki torch, and saw another individual point a gun at Payne and pull the trigger. Clement Miller saw an individual hit Payne with a tiki torch, and he saw an individual threaten to kill Payne. He saw another individual point a gun at Payne and pull the trigger.

Jakari Hart had a gun, and he discharged it into the air while appellant was standing next to him. Hart testified appellant tried to take the gun from him, but that he gave the gun to Scott. Hart admitted he had testified to the grand jury that appellant then got the gun from Scott.

Small was wearing a dark blue shirt, and at one point during the party he walked near a crowd when he kicked a bottle. An expert testified that the color blue is the color for the Crips, a rival gang of the Bloods. Small bent over to pick up the bottle and, when he stood up, a large African-American man hit him in the face. Small told the man who hit him, "Hold on, man. I ain't like that[,]" after which someone said, "You made it like that" and then several individuals hit him, knocking him unconscious. Small told an investigator that while he was being hit the

- 3 -

individuals said, "We ain't wearing red for nothing." McLaughlin saw approximately twelve individuals kick and beat Small. McLaughlin testified the individuals were wearing predominately red and said, "You don't think we're wearing red for nothing." While Small was unconscious, his back was twice burned with a cigarette. Small testified that he had known appellant for approximately ten years, that he saw appellant at the party, and that before the trial appellant's girlfriend approached his cousin, and asked the cousin to get Small to drop the charges.

Christina Wade, appellant's girlfriend, testified to telephone conversations she had with appellant that a reasonable fact finder could interpret as an attempt by appellant to intimidate the Commonwealth's witnesses.

Donald Stouffer saw a large man yelling, "We're not wearing red for the hell of it." Stouffer knew appellant, and he saw appellant "doing something" to Small's back while Small was on the ground unconscious. Stouffer testified appellant was not trying to help Small.

Special Agent Campbell, the gang investigator for the state police and expert in the Nine Trey Bloods, testified the cigarette burns on Small's back could have been the beginning of a "Trey burn," which was a Blood mark, and the burns could have been retaliation for showing disrespect to the Nine Trey Bloods. Campbell testified if a Blood member thought an individual was a member of the Crips and put a "Trey burn" on the person, it would be a sign of great disrespect.

Investigator Christopher Hartless, an officer with an anti-gang task force and an expert in the Nine Trey Bloods, testified the words "Blood at" were a war cry for the Bloods. Hartless explained that when members of the Blood gang hear the war cry, they converge to the source of the cry and provide whatever assistance is needed. Hartless also testified that something as small as a hat could show an affiliation to a gang and the higher on the body the item was worn, the

more respect was shown for the gang. Hartless also explained the significance of certain hand signals that some of the Commonwealth's witnesses saw at the party.

Whitney Randolph, appellant's cousin, witnessed fights at the party. Randolph testified the first fight she saw was when Scott "knocked out" a man after he kicked a bottle. Randolph testified three or four people jumped into the fight, but appellant, who was standing on a hill approximately twenty feet away, was not one of them.

Appellant initially told investigating officers that he did not attend the party. But, at trial he testified that he attended the party and talked to Small. Appellant had known Small for approximately ten years. Appellant testified he witnessed fights and helped one of the hosts of the party break up a fight. He also testified he saw the large fight at the end of the party while he talked with Dean Crawford and Jeremy Redman. Appellant testified he saw two men get hit with tiki torches and that he saw Hart pull out a firearm, firing it in the air. Appellant testified Scott grabbed the firearm from Hart and that Scott put the firearm to another individual's chest. Appellant saw the firearm "flying up in the air" during the fight. Appellant testified he did not see the incident involving Small, that he did not participate in any fight, that he never possessed the firearm, and he was not a member of a gang. Appellant admitted he could have worn a Boston Red Sox's hat to the party. On cross-examination, appellant admitted he did see the cigarette burn incident involving Small, but he did not realize at the time that Small was the victim. Appellant testified Hart was his friend, but that Hart was lying when he told the grand jury that appellant had the firearm.

## ANALYSIS

Appellant argues the evidence was insufficient to prove that a mob formed with the intent to assault Johnston and Payne, and the evidence was insufficient to prove he was a member of the mob that assaulted Johnston, Payne, and Small. Appellant contends no witness identified

him at the scene of Johnston's assault. He argues that Scott hitting Johnston with a tiki torch was nothing more than "one belligerent individual" hitting a victim. Appellant further contends no witness identified him at the scene of Payne's assault and that Payne was not assaulted by a mob because there was no evidence of shared intent. Appellant contends only Stouffer's testimony placed him at the scene of Small's assault, but he could have been helping Small at that time.

Code § 18.2-46.2 provides:

> Any person who actively participates in or is a member of a criminal street gang and who knowingly and willfully participates in any predicate criminal act committed for the benefit of, at the direction of, or in association with any criminal street gang shall be guilty of a Class 5 felony.

"In order to prove that [the defendant] participated in a 'criminal street gang,' the Commonwealth was required to show that members of the gang 'individually or collectively engage in or have engaged in a pattern of criminal gang activity.'" Corado v. Commonwealth, 47 Va. App. 315, 332, 623 S.E.2d 452, 460 (2005) (quoting Code § 18.2-46.1).

"In order to sustain a conviction of assault or battery by mob under Code § 18.2-42, the evidence must establish that the accused was a member of a mob and that the mob committed simple assault or battery." Commonwealth v. Leal, 265 Va. 142, 146, 574 S.E.2d 285, 288 (2003). "Under Code § 18.2-38, a 'mob' is defined as '[a]ny collection of people, assembled for the purpose and with the intention of committing an assault or a battery upon any person or an act of violence as defined in § 19.2-297.1, without authority of law . . . .'" Hughes v. Commonwealth, 43 Va. App. 391, 399, 598 S.E.2d 743, 746-47 (2004).

> In order for group behavior by individuals to become mob behavior, thereby making "[a]ny and every person composing a mob culpable for the criminal acts of the other mob members, the group must have "assembled for the purpose and with the intention of committing an assault or a battery upon any person."

Harrell v. Commonwealth, 11 Va. App. 1, 7, 396 S.E.2d 680, 683 (1990) (quoting Code

§ 18.2-38). "To prove the crime of battery or maiming by mob, the Commonwealth must

'establish beyond a reasonable doubt that the group of persons were at the time of the battery [or

maiming] assembled as a mob with a purpose and intention of committing an assault or battery

[or maiming].'" Hughes, 43 Va. App. at 400, 598 S.E.2d at 747 (quoting Harrell, 11 Va. App. at

4, 396 S.E.2d at 681).

> The criteria which distinguishes individual behavior while part of a group from "mob" behavior is assembling for the specific purpose and with the specific intent of committing an assault and battery upon any person. That is not to say that the purpose for which the group initially came together must have been for the purpose of committing an assault and battery before a "mob" may be said to have "assembled." It is possible that individuals who are lawfully assembled may become members of a "mob" without great deliberation and for them to become part of a group which is moved or controlled by those impulsive and irrational forces which perpetuate mob violence. For a group of persons lawfully gathered for whatever purpose to "assemble" as a mob within the intendment of Code § 18.2-38, they need only to collectively band together with the common purpose and intention of committing an assault and battery upon a person. Whether a group of individuals has been so transformed into a "mob" depends upon the circumstances; no particular words or express agreements are required to effect a change in a group's purpose or intentions. Events or emotionally charged circumstances suddenly may focus individuals toward a common goal or purpose without an express or stated call to join forces.

Harrell, 11 Va. App. at 7-8, 396 S.E.2d at 683.

"The credibility of the witnesses and the weight accorded the evidence are matters solely

for the fact finder who has the opportunity to see and hear that evidence as it is presented."

Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). "In its role of

judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of

the accused and to conclude that the accused is lying to conceal his guilt." Marable v.

Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

"On review, this Court does not substitute its judgment for that of the trier of fact. Instead, the jury's verdict will not be set aside unless it appears that it is plainly wrong or without supporting evidence." Canipe v. Commonwealth, 25 Va. App. 629, 644, 491 S.E.2d 747, 754 (1997).

Early in the party, individuals wearing red bandanas told Johnston they were Bloods. Appellant attended the party and, prior to the fights, he told McLaughlin, who was wearing a red hat and shirt, that he was "a Blood and don't even know it." During cross-examination, appellant reluctantly admitted he might have been wearing a Boston Red Sox's hat. An expert in gang activity testified a Boston Red Sox's hat, which has a red capital "B" on it, was frequently worn by members of the Bloods, and the higher on the body the item was worn, the more respect was shown for the gang. The evidence shows that appellant identified with the Bloods. At approximately 3:00 a.m., just before the party ended, Johnston saw a group of individuals fighting and he went to investigate. Johnston heard the specific gang signal "Blood at" said in a way mimicking gunfire. The "Blood at" gang signal was a signal for members of the Bloods to converge and help a fellow gang member. Johnston approached the scene, saw several individuals with red bandanas over their faces, and Scott hit Johnston with a tiki torch. Scott was a lieutenant in the Nine Trey Bloods, and he was "standing out in front of a crowd wanting to fight people." Scott's assault and battery of Johnston was not an instance of "one belligerent individual," but supports the jury's determination that the individuals banded together with the common purpose and intention of committing an assault and battery. There was sufficient evidence proving that a mob committed an assault and battery on Johnston in violation of Code § 18.2-42.

Payne went to investigate a noise, and an individual hit him with a tiki torch. Switzer heard someone yell the specific gang signal "Blood at" just prior to Payne being hit. There was

sufficient evidence proving that a mob committed an assault and battery on Payne in violation of Code § 18.2-42.

Although appellant testified he did not participate in the fights involving Johnston and Payne, he admitted he witnessed Johnston and Payne being hit with tiki torches. Prior to being hit, Johnston heard the war cry for the Bloods. Scott, a leader in the gang, hit Johnston while surrounded by several individuals wearing red bandanas covering their faces. The jury rejected appellant's testimony that he was not one of the individuals surrounding Scott. When Payne was hit with a tiki torch, Hart, appellant's friend, testified appellant was standing next to him and that appellant tried to grab a firearm from him. Hart gave the firearm to Scott and, according to Hart's grand jury testimony, appellant got the firearm from Scott. Payne felt a firearm next to his chest. The jury was entitled to reject appellant's testimony that he was not the individual who held a firearm to Payne's chest after Payne was hit with a tiki torch. Appellant admitted he was in the area of the fights. The evidence was sufficient to support the jury's determination that appellant was participating in the mob activity involving Payne.

Small wore a dark blue shirt, the color for the Crips, a rival gang of the Bloods. Small bent over to pick up a bottle and, when he stood up, a man hit him in the face. Small said, "Hold on, man. I ain't like that." Small testified someone said, "You made it like that" and then individuals hit Small, knocking him unconscious. Prior to losing consciousness, Small heard the individuals state, "We ain't wearing red for nothing." Stouffer knew appellant, and he saw appellant "doing something" to Small's back while Small was on the ground unconscious. According to Stouffer, appellant was not trying to help Small. While Small was unconscious, his back was twice burned with a cigarette. A gang expert explained the significance of the cigarette burns to Small's back. After the incident, appellant's girlfriend approached Small's cousin and

asked Small to drop the charges.  There was sufficient evidence supporting the jury's decision that appellant participated in the mob activity involving Small.

Accordingly, there was sufficient evidence supporting the jury's decision that appellant participated in a criminal street gang in violation of Code § 18.2-46.2 and he participated in the assault and battery of Johnston, Payne, and Small in violation of Code § 18.2-42.

<u>Affirmed.</u>